```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                     CHARLESTON


WILLIAM A. MERRITT,

        Plaintiff,

v.                                  Case No. 2:09-cv-00522

RUSSELL MATHENY, Captain, et al.,

        Defendants.
```

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is a Motion for Summary Judgment filed by defendant Janet Payne (ECF No. 100).  This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and the subject motion is referred to the undersigned United States Magistrate for submission of proposed findings and a recommendation for disposition.

## STATEMENT OF UNDISPUTED FACTS

The plaintiff is an inmate at the Mount Olive Correctional Complex ("MOCC") in Fayette County, West Virginia.  On December 16, 2008, correctional officers conducted a facility-wide contraband search.  In preparation of the search of the plaintiff's cell, the plaintiff was asked to strip down and to "squat and cough."  The plaintiff alleges that he "smirked" in response to that request, which was not a regular procedure during a cell search at MOCC. (ECF No. 102, Ex. B at 32-33).

The plaintiff's Amended Complaint alleges, and the plaintiff also testified in his deposition, that Correctional Officer John C. Young became belligerent, and asked the plaintiff if he thought something was funny. The plaintiff further testified that he responded, "You know, it's nothing, it's just something I remembered, I was remembering." (ECF No. 102, Ex. B at 32). The plaintiff further testified that, after Young repeatedly asked him if he thought something was funny, the plaintiff replied, "Well. I'm laughing, aren't I?" (Id. at 34-35).

Young then allegedly told Captain Russell Matheny, "Matheny, we have a smartass over here." (Id.) The plaintiff further alleges that, at that point, defendants Young, Matheny, Hill and Neese came to the plaintiff's cell, grabbed him, and slammed him against the wall of his cell and placed handcuffs on him. Matheny then allegedly instructed the other correctional officers to bring the plaintiff to a nearby storage closet, where the plaintiff alleges they violently slammed him into the closet door and then the wall of the closet. Matheny allegedly told the plaintiff that Warden Ballard had told him to "whoop anyone that offered any resistance . . ." (Id. at 39). The plaintiff further claims that he was subjected to further violence and injury, when the correctional officers slammed his head into the wall, causing a cut to his jaw when his face made contact with a metal mop holder on the wall. (Id. at 40).

The plaintiff filed grievances concerning the incident during the search of his cell and also concerning the medical treatment he received thereafter. The grievances were reviewed and denied by the plaintiff's unit manager, Janet Payne, on December 29, 2008. The plaintiff's first grievance asserted in pertinent part that the plaintiff had a "gash" on his jaw caused by striking a metal clasp on the wall of the cleaning closet, and that he was "concerned about infection and anything else that [he] could and probably would have contracted from the metal clasp." (ECF No 102, Ex. D). The grievance further states that the plaintiff talked to Sgt. Eric Miller and Unit Manager John Bess, and was told that he could see the nurse when she came to do "pill pass." (Id.) He further states that Sgt. Miller gave him two alcohol pads to clean the cut. (Id.) The grievance further states that, when the nurse came to his cell, she told him it was "just a scratch," and told him to put in a sick call slip, but she wouldn't give him anything to clean the wound. (Id.) The plaintiff claimed that the nurse was negligent. (Id.) Ms. Payne's response to the grievance states: "This clearly was not life-threatening, therefore the nurse was correct in telling you to submit a sick call slip." (Id.)

The plaintiff's second grievance concerned the incident of the alleged use of excessive force by the correctional officers who came to conduct the cell search. (ECF No. 102, Ex. E). In response to his allegations about the incident, Ms. Payne

3

responded: "Your behavior was inappropriate, and you were followed up with by medical." (Id.)

The plaintiff testified that, in denying the grievances without an investigation, Ms. Payne condoned the behavior of the other defendants, and further alleges that she "yelled at him as if I shouldn't have even filed a grievance to begin with." (Id. at 58).

## STANDARDS OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not

appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23.

Rule 56(c)(1) discusses the information that may be considered to support the factual positions of the parties. The rule states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P 56(c)(1).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406,

414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## ANALYSIS

Ms. Payne's Memorandum of Law in support of her Motion for Summary Judgment asserts that there appears to be no specific cause of action alleged against her, and that the Amended Complaint merely alleges that "Janet Payne, Unit Manager for MOCC denied each of the [Plaintiff's] grievances, thereby providing additional evidence of the failure of the Defendants, individually and collectively, to remedy or otherwise adequately address the intentional, malicious, sadistic and/or deliberately indifferent actions of the Defendants, individually and collectively . . . ." (ECF No. 101 at 2, citing ECF No. 65 at 8). Ms. Payne's Memorandum further asserts that the plaintiff has conceded that Ms. Payne did not cause him any injury, and that "[s]he has no part in this whole scenario with anything that occurred prior to the injury." (ECF No. 101 at 3). Ms. Payne states that the plaintiff has agreed that her conduct was limited to the denial of his grievances. (Id.)

Ms. Payne asserts that she is entitled to qualified immunity because the undisputed evidence developed in this case reveals that she did not violate the plaintiff's constitutional rights. (Id. at 4). Public officials are not liable for monetary damages if they

can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. See Wilson v. Layne, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001), *receded from by* Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. Saucier, 533 U.S. at 201. If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. The Pearson decision clarified that courts may exercise discretion in determining which of these two prongs to address first. 555 U.S. at 236.

7

Ms. Payne asserts that there is no genuine issue of material fact concerning the fact that she used no force whatsoever on the plaintiff. (ECF No. 101 at 5). Ms. Payne further asserts that the plaintiff cannot establish any liability against her based upon her role in the review of his grievances. Ms. Payne asserts that there is no entitlement to grievance procedures, or to an impartial reviewer of such requests and, therefore, the plaintiff cannot establish a due process or other constitutional violation on that basis. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, Ms. Payne asserts that the court should dismiss the plaintiff's claim regarding the grievance process.

The plaintiff, by counsel, filed a Response to the Motion for Summary Judgment. (ECF No. 102). The Response asserts that the West Virginia Division of Corrections' grievance process is a public policy, which, although it does not specify what action is appropriate in response to a claim of physical abuse, defines an investigation as follows:

> Refers to a process, whether formal or informal, by which information necessary to compile a response is provided. It can be as simply [sic; simple] as a verbal inquiry or can involve a more detailed investigation.

See *Policy Directive 335.00* (attached to ECF No. 102 at Ex. C).

The plaintiff's Response further asserts:

> The policy directive goes on to describe the appeals process that an inmate may take from an initial denial of a grievance. The unit manager is the individual assigned the responsibility of first processing the grievance. See, id., at pg. 4. In this instance, Ms. Payne was

8

> charged with conducting an investigation into Mr. Merritt's allegations and either affirming or denying Mr. Merritt's respective grievances. The grievance process constitutes a "policy or custom" that played a part in the violation of Mr. Merritt's constitutional rights by denying any form of remedy to him through the ratification of the conduct of the other defendants. See Purvis v. Prime Care Inc., 2009 U.S. Dist. LEXIS 129558, at *6 (N.D. W. Va. 2009), citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed.2d 114 (1985); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).
>
> * * *
>
> The denial of the respective grievances filed by Mr. Merritt does not discuss or even mention what, if any, investigation was completed concerning Mr. Merritt's allegations of physical abuse against prison employees. The grievance denials do not mention interviews, completed, or physical evidence that was gathered in response to the serious misconduct perpetrated by prison employees. Defendant Payne's motion for summary judgment does not even assert that an investigation was completed in response to the allegations of excessive force. In the absence of a sufficient investigation, the denial of Mr. Merritt's grievances amount to a summary denial of his due process rights and a *prima facie* violation of the grievance process at Mount Olive Correctional Complex.

(Id. at 5, 7).

Turning to Ms. Payne's claim that she is entitled to qualified immunity, the plaintiff's Response asserts that:

> Plaintiff's claims against Defendant Janet Payne in this civil action are twofold: (1) her acceptance and ratification of the excessive force utilized on Mr. Merritt by other prison employees with a summary denial of a request for medical care; and (2) Ms. Payne's failure to properly review, investigate and/or take action after Mr. Merritt had filed his grievance arising from the events of December 16, 2008. Because Ms. Payne accepted and ratified the conduct of the other prison employees and because she failed to thoroughly investigate Mr. Merritt's grievance, her motion for summary judgment must be denied.

(Id. at 8-9). In support of his argument, the plaintiff cites Durran v. Selsky, 251 F. Supp.2d 1208 (S.D.N.Y.), in which the court held:

> "It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Johnson v. Newburgh Enlarged School Dist., 239 F.3d 156, 164 (2d Cir. 2001)(quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); see also Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which such unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating the unconstitutional acts were occurring. Colon, 58 F.3d at 873; Williams v. Smith, 781 F.2d 319, 323-23 (2d Cir. 1986)[Footnote omitted].

251 F. Supp.2d at 1212-1213. (ECF No. 102 at 9).

The plaintiff's Response also cites a recent case out of the Northern District of West Virginia, Jenkins v. North Central Regional Jail, in which the court addressed supervisory liability as follows:

> A supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) there was an 'affirmative

> causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

2009 U.S. Dist. LEXIS 87775 (N.D. W. Va. 2009), <u>citing</u> <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994). (ECF No. 102 at 9-10).

The plaintiff's Response further asserts:

> Applied in the instant matter, Ms. Payne had actual or constructive knowledge that the other defendants engaged in conduct which amounted to excessive force against Mr. Merritt. Furthermore, the lack of medical care for Mr. Merritt after the incident amounted to an "unreasonable" risk of constitutional injury to him. Ms. Payne's response was to deny Mr. Merritt's respective grievances, which amounted to a tacit authorization of the conduct of the other Defendants during the events of December 16, 2008. The language used in the grievance denial supports this conclusion ("Your behavior was inappropriate and you were followed up with by medical.") See, *Grievance II*. Finally, an affirmative causal link between the constitutional injury and the conduct of Ms. Payne is present as a result of the failure to investigate the incident and preserve evidence. Additionally, the failure to properly investigate resulted in the constitutional violation being ratified.
>
> As previously stated, the grievance process at MOCC is part of the "policy and custom" of the State of West Virginia's Division of Corrections. Defendant Payne was involved in the grievance process and failed to act on the information she received, which strongly indicated that there was physical abuse of a prisoner and that Mr. Merritt needed medical care due to the strong possibility of serious infection from the cut caused by the physical abuse.

(<u>Id.</u> at 10).

The plaintiff asserts that defendant Payne's reliance on <u>Adams v. Rice</u>, 40 F.3d at 75, is misplaced because the issue before the court lies in Ms. Payne's ratification of the conduct of the other defendants, and the denial of medical care. (<u>Id.</u> at 11). The

11

plaintiff states that, collectively, the facts present sufficient issues of material fact that must be decided at trial, and that summary judgment in favor of Ms. Payne should be denied. (Id. at 12). Defendant Payne did not file a Reply brief.

It is unclear whether Ms. Payne has supervisory authority; however, as a unit manager, it stands to reason that she is responsible for the management of her unit and the staff that is working therein. By denying a grievance alleging the use of excessive force simply by stating that the inmate acted inappropriately, a factfinder could reasonably find that Ms. Payne believed that it was acceptable to beat up the plaintiff for acting inappropriately, and ratified the correctional officers' allegedly unconstitutional conduct.

The undersigned proposes that the presiding District Judge **FIND** that there are genuine issues of material fact concerning whether Ms. Payne, as a supervisory official, had actual or constructive knowledge of a violation of the plaintiff's constitutional rights, and whether her response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices." Jenkins, *supra*. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Ms. Payne has not demonstrated that she is entitled to qualified immunity, and that summary judgment is not appropriate in this matter.

Therefore, it is respectfully recommended that the presiding District Judge **DENY** the Motion for Summary Judgment filed on behalf of defendant Janet Payne (ECF No. 100), and permit this claim to go forward to trial, along with the claims against the remaining defendants.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Synder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such

13

objections shall be served on opposing parties and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy to counsel of record.

    September 22, 2011                *Mary E. Stanley*
        Date                          Mary E. Stanley
                                          United States Magistrate Judge